1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARMOND SARKIS,                          Case No.  2:21-cv-01097-TLN-JDP (PS)

12              Plaintiff,                    **FINDINGS AND RECOMMENDATIONS**

13         v.                                 THAT DEFENDANTS' MOTION FOR
                                              SUMMARY JUDGMENT BE GRANTED IN
14   YOLO COUNTY PUBLIC AGENCY                PART AND DENIED IN PART
     RISK MANAGEMENT INSURANCE
15   AUTHORITY, *et al.*,                     ECF No. 61

16              Defendants.                   OBJECTIONS DUE WITHIN FOURTEEN
17                                            DAYS

18

19         Plaintiff Armond Sarkis, proceeding without counsel, commenced this wrongful

20   termination action against his former employer, Yolo County Public Agency Risk Management

21   ("Yolo" or "YCPARMIA") and the president of its Board of Directors, Jill Cook.  He alleges

22   claims under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights

23   Act of 1964 ("Title VII"), and California's Fair Employment and Housing Act ("FEHA").

24   Defendants move for summary judgment.  ECF No. 61.  I recommend that defendants' motion be

25   granted in part and that the court decline to exercise supplemental jurisdiction over the remaining

26   state law claims.

27

28

                                              1

1

**Factual Background**

2      Plaintiff is an Iranian-born American of Middle Eastern descent who was born in 1970.[1]

3      ECF No. 61-4 at 8.  Yolo is a special district that helps safeguard public funds from the risk of

4      loss by offering safety trainings and risk management and insurance programs to local

5      governments.  ECF No. 61-5 at 1-2.  In March 2019, plaintiff interviewed with Yolo's Board of

6      Directors, which included defendant Cook, for the position of CEO/Risk Manager.  ECF No. 61-4

7      at 9-11, 24, 41-42; ECF 64-3 at 15; ECF No. 70 at 13-20.  Plaintiff was hired for the position on

8      April 10, 2019.  ECF No. 61-4 at 58.  Plaintiff's employment contract enumerated a three-year

9      period of employment but specified that plaintiff was an at-will employee.  ECF No. 61-4 at 9-12,

10     25-27.  Part of plaintiff's contract required him to "[k]eep the Board of Directors advised of

11     [Yolo's] activities and laws, issues, or problems that may affect [Yolo] operations."  *Id.* at 13, 24.

12     Yolo employed approximately six employees during plaintiff's tenure.  *Id.* at 41-42.

13     In February 2020, as part of his employment with Yolo, plaintiff attended the Public

14     Agency Risk Management ("PARMA") conference in Monterey, California.  ECF No. 64-2 at 4.

15     On February 26, plaintiff invited his former coworker, Tamara Tuell, to his hotel room.  ECF No.

16     70 at 43-47.  What happened between the two in plaintiff's room is disputed by the parties, but

17     they agree that Tuell subsequently filed a police report alleging that plaintiff sexually assaulted

18     her.[2]  Following the incident, Monterey County police officers interviewed plaintiff.  ECF No.

19     61-4 at 56, 98.  The Monterey County District Attorney declined to prosecute the alleged assault.

20     ECF No. 64-3 at 208, 296.

21     Following the conference, plaintiff did not inform Yolo of the incident.  ECF No. 64-2 at

22     9; ECF No. 61-4 at 21.  However, on April 15, 2020, Tuell sent the Yolo Board an email alleging

23     that plaintiff had sexually assaulted her at the PARMA conference on February 26, 2020.  ECF

24     No. 61-3 at 2, 5-13.  Tuell included a copy of the police report in the email.  *Id.* at 5-13.  In light

25     _____

26     [1] Defendants have raised evidentiary objections to multiple exhibits submitted by plaintiff.
ECF No. 65 at 6-9.  Because the evidence to which defendants object was not material to
27     resolution to defendants' motion, I decline to address those objections.
[2] Plaintiff testified that nothing untoward happened between them, and that Tuell filed a
28     false police report.  ECF No. 70 at 47-54.

1   of the Tuell's email, the Board held an emergency meeting on April 22, 2020. *Id*. at 2. Plaintiff

2   provided the Board with his version of events from the incident on April 23, 2020. ECF No. 61-4

3   at 57-58. Plaintiff was placed on administrative leave later that day. ECF No. 64-3 at 109. The

4   Board held another meeting on May 1, 2020, during which it made the decision to terminate

5   plaintiff. ECF No. 61-3 at 2-3. The Board provided plaintiff with his termination packet on May

6   4, 2020. *Id*. at 15.

7           Plaintiff claims that during the month prior to his termination, defendant Cook, who

8   served as the President of the Yolo Board, made several discriminatory remarks about plaintiff.

9   ECF No. 64-3 at 40, 99. He testified that Cook called him "an arrogant immigrant," ECF No. 64-

10  3 at 50; a "dumbass immigrant," *id.* at 51; "an uncooperative old fuck," *id*. at 85; an "arrogant

11  sand ni\*\*er,"[3] *id.* at 95; "a hard-headed arrogant immigrant," *id*. at 96; and referred to him as "an

12  old grouchy dude," *id.* at 106. Plaintiff also claims that Cook told him that it was "a shame" he is

13  an ethnic Armenian who was born in Iran. *Id*. at 96. Plaintiff first reported Cook's

14  discriminatory remarks to Crystal Zaragoza, who was the vice-president at Yolo, on April 16,

15  2020. *Id.* at 94; ECF No. 61-4 at 38-39. He later reported Cook's remarks to Ron Martinez,

16  county counsel for Yolo County, on April 24, 2020. *Id.* Cook denies making any derogatory

17  statements about plaintiff's national origin or age. ECF No. 61-3 at 2.

18          Plaintiff testified that Cook asked him to terminate another employee, a Tom McGuire,

19  ECF No. 70 at 24-37; ECF No. 70-1 at 9. Plaintiff refused Cook's order and did not fire

20  McGuire, despite Cook saying she "want[ed] the old prick gone today." ECF No. 70 at 24-37;

21  ECF No. 64-3 at 189.

22          Following plaintiff's termination, he was replaced by an interim CEO, James Marta. ECF

23  No. 61-5 at 2. Marta is currently sixty years old. *Id.* Shortly thereafter, Marta was replaced by

24  Carole Richardson, who was born in 1954. *Id.* Finally, Barbara Lubben replaced Richardson in

25  2022. *Id.* Lubben was born in 1960. *Id.*

26

27

28          [3] The court has chosen to censor this slur.

1

**Legal Standard**

2      Summary judgment is appropriate where there is "no genuine dispute as to any material

3 fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington*

4 *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine

5 only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,

6 while a fact is material if it "might affect the outcome of the suit under the governing law."

7 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818

8 F.2d 1422, 1436 (9th Cir. 1987).

9      Rule 56 allows a court to grant summary adjudication, also known as partial summary

10 judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim.

11 *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule

12 56 authorizes a summary adjudication that will often fall short of a final determination, even of a

13 single claim . . . .") (internal quotation marks and citation omitted).  The same standards apply to

14 both a motion for summary judgment and a motion for summary adjudication.  *See* Fed. R. Civ.

15 P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

16      Each party's position must be supported by (1) citations to particular portions of materials

17 in the record, including but not limited to depositions, documents, declarations, or discovery; or

18 (2) argument showing either that the materials cited do not establish the presence or absence of a

19 genuine factual dispute or that the opposing party cannot produce admissible evidence to support

20 its position.  *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider

21 materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P.

22 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see*

23 *also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

24      "The moving party initially bears the burden of proving the absence of a genuine issue of

25 material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the

26 moving party must either produce evidence negating an essential element of the nonmoving

27 party's claim or defense or show that the nonmoving party does not have enough evidence of an

28 essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins.*

4

*Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 323).  The nonmoving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Analysis**

Plaintiff alleges that defendants wrongfully terminated his employment in violation of Title VII and the ADEA.  He further alleges that defendants subjected him to disparate treatment, harassment, and retaliation under California's FEHA.  ECF No. 7.

Disparate treatment claims of employment discrimination are analyzed under the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4]  *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1093-94 (9th Cir.

---

[4] In terms of plaintiff's FEHA claims, California courts also employ the *McDonnell Douglas* burden-shifting framework to analyze claims of disparate treatment.  *See Lawler v. Montblanc North America, LLC*, 704 F.3d 1235, 1242-43 (9th Cir. 2013); *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017 (E.D. Cal. 2010) (FEHA national origin discrimination); *Guz v.*

2005).  Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Id.* at 1094.  The burden of production then shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

## I.    ADEA

The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).  A plaintiff alleging age discrimination under the ADEA may proceed on either a disparate treatment or disparate impact theory.  *Palmer v. United States*, 794 F.2d 534, 536-37 (9th Cir. 1986).  Plaintiff argues he was subjected to intentional discrimination; therefore, he proceeds on a disparate treatment theory.  ECF No. 64 at 14.

### A.  Prima Facie Case

To establish a prima facie case of age discrimination under the disparate treatment theory, plaintiff must show he: (1) was a member of a protected class; (2) was performing his job in a satisfactory manner; (3) experienced an adverse employment action; and (4) was replaced by a substantially younger employee with equal or inferior qualifications.  *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017) (internal citation omitted); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1209 (9th Cir. 2008).  The fourth element can also be expressed as "some other circumstance suggesting a discriminatory motive."  *Krylova v. Genentech Inc.*, 37 F. Supp. 3d 1156, 1163 (N.D. Cal. 2014).

Defendants do not dispute that plaintiff was a member of a protected class, that his job performance was satisfactory, or that he was discharged.  Defendants only dispute the fourth element, arguing that plaintiff cannot demonstrate that he was replaced by a substantially younger

*Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) (FEHA age discrimination); *Moore v. Regents of University of California*, 248 Cal. App. 4th 216, 234 (2016) (FEHA retaliation).

1  employee with equal or inferior qualifications.  ECF No. 61-1 at 15.  In opposition, plaintiff

2  argues that there is sufficient evidence suggesting a discriminatory motive.  ECF No. 64 at 14-17.

3       Plaintiff was born in 1970 and was forty-nine years old when Yolo hired him.  He was

4  replaced by James Marta, who was fifty-six years old at the time he was hired as interim-

5  CEO/Risk Manager.  As plaintiff's replacement was more than five years his senior, this evidence

6  suggests that plaintiff's age was not a reason for his termination.  As to plaintiff's replacement's

7  qualification—plaintiff has not presented evidence that Marta has equal or inferior qualifications

8  to him.

9       However, plaintiff can demonstrate the fourth element by showing "some other

10  circumstance suggesting a discriminatory motive."  *See Krylova*, 37 F. Supp. 3d at 1163.  Plaintiff

11  has presented some evidence that Cook made discriminatory remarks regarding his age,

12  specifically, she called him "an uncooperative old fuck" and "a grouchy old dude."  ECF No. 64-

13  3 at 85, 106.  There is also evidence that Cook ask plaintiff to terminate Tom McGuire and stated

14  that she "want[ed] the prick gone today."  ECF No. 64-3 at 189.  This evidence, while minimal, is

15  sufficient to meet plaintiff's burden at this stage.  *See Krylova*, 37 F. Supp. 3d at 1163; *Davis v.*

16  *Team Elec. Co.*, 520 F.3d 1080, 1089 ("A plaintiff alleging employment discrimination "need

17  produce very little evidence in order to overcome an employer's motion for summary

18  judgment.").

19  B. Legitimate, Non-Discriminatory Reason

20       If plaintiff establishes a prima facie case, the "burden of production, but not

21  persuasion, [shifts] to the employer to articulate some legitimate, nondiscriminatory reason for

22  the challenged action."  *Chuang v. U.C. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir.

23  2000).  "To accomplish this, the defendant must clearly set forth, through the introduction of

24  admissible evidence, the reasons for" the challenged adverse employments actions.  *Lyons v.*

25  *England*, 307 F.3d 1092, 1112 (9th Cir. 2002).  Whether a defendant has met its burden of

26  production involves "no credibility assessment."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

27  509 (1993).  "In other words, the factfinder's general duty to draw all reasonable inferences in

28  favor of the nonmovant does not require that the court make a credibility determination on the

1  defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that

2  evidence." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

3      Defendants presented evidence that plaintiff's employment was terminated because he

4  failed to comply with the terms of his employment contract, which required him to "[k]eep the

5  Board of Directors advised of [Yolo's] activities and laws, issues, or problems that may affect

6  [Yolo] operations." ECF No. 61-4 at 13; 24.  Plaintiff did not advise the Board that during a

7  work-related trip, he had been accused of sexually assaulting an acquaintance.  A little over a

8  week after learning of the alleged assault, Yolo placed plaintiff placed on administrative leave,

9  and ultimately terminated his employment.  ECF No. 64-3 at 15, 107.  This evidence is sufficient

10 to establish a legitimate, nondiscriminatory basis for plaintiff's termination.

11     C.  <u>Pretext</u>

12     The burden now shifts to plaintiff to raise a genuine dispute of material fact as to pretext

13 to avoid summary judgment.  *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015), *as*

14 *amended on reh'g* (Oct. 14, 2015).  "A plaintiff asserting age discrimination can 'demonstrate

15 pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely

16 than not motivated the employer; or (2) indirectly, by showing that the employer's proffered

17 explanation is unworthy of credence because it is internally inconsistent or otherwise not

18 believable.'" *Id.* (citation omitted).

19     Plaintiff argues defendants' "proffered explanation of legitimate termination of [him] for

20 failure to report [the Tuell incident] is unworthy of credence because it is internally inconsistent

21 and not believable." ECF No. 64 at 12.  Plaintiff states that he was terminated without cause, and

22 that it was not until he commenced this action that defendants attributed their termination

23 decision to his failure to report the Tuell incident.  *Id.*

24     Plaintiff has failed to demonstrate that there is a triable issue of material fact as to pretext.

25 Plaintiff's argument that there are inconsistencies in defendants' proffered reason for termination

26 does not support a finding that he was terminated because of his age.  Plaintiff was an at-will

27 employee and could be terminated without cause—which happened.  Defendants have now

28 proffered that they terminated him because he was accused of sexually assaulting Tuell at

conference where he was representing Yolo and because he hid the accusations from them. "[S]eparate reasons offered by an employer are not considered 'shifting' if they are not 'incompatible.'" *Culver v. Qwest Comm. Corp.*, 306 F. App'x 403, 405 (9th Cir. 2009); *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). That is, pretext is not inferred "from the simple fact that [the employer] had two different, although consistent, reasons" for its conduct. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 661-62 (9th Cir. 2002). Plaintiff has not demonstrated that defendants' proffered reason for his termination is incompatible with the reasons initially provided for terminating his employment. Indeed, plaintiff maintains that prior to this action, defendants provided no explanation for why he was fired. Furthermore, defendants were under no obligation to inform plaintiff of the basis for their decision, given that plaintiff was an at-will-employee. *See Mousaw v. Teton Outfitters, LLC*, No. 4:14-CV-00508-EJL-REB, 2016 WL 5746344, at *7 (D. Idaho Sept. 30, 2016) (finding that because the plaintiff was an at will employee, the defendants had no legal obligation to inform the plaintiff why he was terminated, and that when they later provided him with reasons for his termination, the change from no reason to some reasons was not evidence of pretext).

Plaintiff has also failed to show that discrimination was more likely than not the motivation behind his termination. Indeed, there is a strong inference that his termination was not motivated by discrimination, because plaintiff was terminated thirteen months after Yolo hired him, and Cook was a part of the Yolo Board of Directors that hired him. The Ninth Circuit has held that when "'the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1286 (9th Cir. 2000), (quoting *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996)); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1161 (C.D. Cal. 2013) (noting that a "period of a year and a half qualifies as a 'short period of time'" between hiring and firing an employee such that it led to a strong interference that the defendant's decision to terminate the plaintiffs was not discriminatory). The Yolo Board hired plaintiff in April 2019 and after the Board learned that plaintiff was accused of sexual assault, it elected to terminate him. These actions by the same

1  Board—which included Cook—demonstrate that discriminatory animus did not motivate

2  plaintiff's termination.

## II.  Title VII

4  Defendants argue that Yolo does not qualify as an "employer" under Title VII because it

5  only employed approximately six individuals during plaintiff's tenure.  ECF No. 61-1 at 16.  Title

6  VII makes it unlawful for an employer to discriminate based on an employee's "race, color,

7  religion, sex, or national origin."  42 U.S.C. § 2000e-2(b).  For Title VII purposes, an employer is

8  "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and

9  any agent of such person . . . ."  42 U.S.C. § 2000e-2(b).  It is undisputed that at the time of

10  plaintiff's employment, Yolo employed no more [or only] than six individuals.  ECF No. 61-4 at

11  41-42.  Accordingly, Yolo is not an "employer" for the purpose of a Title VII claim.  Therefore, I

12  will recommend that summary judgment be granted as to plaintiff's Title VII national origin

13  discrimination claim against Yolo.

## III.  Supplemental Jurisdiction

15  Since I am recommending that plaintiff's ADEA and Title VII claims be dismissed, only

16  his state law claims remain.  The court may sua sponte decide whether to continue exercising

17  supplemental jurisdiction.  *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir.

18  1997) (en banc).  Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise

19  supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims

20  over which it has original jurisdiction."  *Yuhre v. JP Morgan Chase Bank*, No. 2:09-CV-02369-

21  GEBJFM, 2010 WL 1404609, at *8 (E.D. Cal. Apr. 6, 2010).  Therefore, I recommend that the

22  court decline to continue exercising supplemental jurisdiction over plaintiff's remaining state law

23  claims and that they be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).  Plaintiff may

24  bring the remaining claims in state court, if he so chooses.

25

26

27

28

Accordingly, it is hereby RECOMMENDED that:

1.  Defendants' motion for summary judgment, ECF No. 61, be granted as to plaintiff's federal claims.

2.  Plaintiff's remaining state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

3.  The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    August 26, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE